# United States Court of Appeals for the Fifth Circuit

_____

No. 25-60504

_____

United States Court of Appeals
Fifth Circuit

**FILED**

August 6, 2026

Lyle W. Cayce
Clerk

Salaruddin Eqbal,

*Petitioner*,

*versus*

Todd Wallace Blanche, *Acting U.S. Attorney General*,

*Respondent*.

_____

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A244 570 064

_____

Before Willett, Engelhardt, and Douglas, *Circuit Judges*.
Kurt D. Engelhardt, *Circuit Judge*:

Salaruddin Eqbal, a native and citizen of Afghanistan, served as security personnel for high-ranking government officials in the Afghan government. When the Taliban seized control of the country in 2021, Eqbal and his family became a target of the Taliban's violence. Eqbal was eventually forced to flee to the United States and sought asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

The Immigration Judge (IJ) denied all relief because it determined that Eqbal's testimony was not credible and that he offered no other evidence

establishing his eligibility for relief. The IJ's adverse credibility determination was based in large part on what it determined to be discrepancies in the positions Eqbal held in the Afghan government and the dates he held those positions. The IJ's determination that Eqbal did not credibly testify to his employment history impacted the weight the IJ gave Eqbal's non-testimonial evidence, the corroborative evidence it required Eqbal to produce, and its analysis of the merits of Eqbal's claims.

Our review of the record reveals no material inconsistency in Eqbal's testimony of his employment history. Because the IJ's erroneous finding in that regard impacted the entirety of its decision, we GRANT the petition for review, VACATE the Board's decision dismissing Eqbal's appeal, and REMAND for further proceedings.

## I. Background

Eqbal was born in 1974 in Afghanistan's Panjshir province, an area that historically resisted the Taliban. He belongs to the Tajik ethnic group, a group that the Taliban perceived as an enemy.

In 1993, Eqbal began working as a bodyguard for Mohammad Qasim Fahim, a prominent opponent to the Taliban's first rise to power in the 1990s. In 1997 or 1998, while working for Fahim, the Taliban arrested and imprisoned Eqbal for one month. The Taliban beat and tortured him, permanently injuring his back. He was released when Fahim arranged a prisoner exchange.

Following the events of September 11, 2001, a new government backed by the United States formed in Afghanistan. Fahim became the vice president of Afghanistan, and Eqbal continued his security-related employment with Fahim from 2001 until Fahim's death in 2014. After Fahim's death, Eqbal continued working in the Afghan government in

security roles from 2014 until the fall of the government in 2021, first for the president of Afghanistan and then for the deputy director of national security.

When the Taliban regained control of Afghanistan, it began killing and imprisoning individuals who worked for the former government, including some of Eqbal's colleagues. The Taliban issued warrants for Eqbal's arrest, citing his former employment, and began actively searching for him. Eqbal and his family were forced into hiding and had to relocate within Afghanistan multiple times to evade the Taliban. In one instance, Taliban agents went to Eqbal's home, but upon finding his mother there alone, interrogated and assaulted her in an attempt to locate Eqbal.

In 2023, fearing for his life and unable to escape the Taliban's searching for him, Eqbal fled Afghanistan. While at the airport attempting to leave the country, Taliban agents stopped Eqbal. Eqbal, with the help of an airport employee who recognized him, convinced the Taliban personnel that he was leaving to seek medical treatment and would return. Since leaving Afghanistan, Eqbal's family remains in hiding and has faced inquiry from the Taliban as to his location.

Eqbal entered the United States in June 2024 and was detained and placed in removal proceedings. The IJ found Eqbal removable for lacking a valid entry document at the time he sought admission to the United States. *See* 8 U.S.C. § 1182(a)(7)(A)(i). Eqbal filed a Form I-589 Application for Asylum and Withholding of Removal seeking asylum, withholding of removal, and protection under CAT because he feared harm by the Taliban due to his work in the former Afghan government and his Tajik ethnicity. He alleges that returning to Afghanistan would be tantamount to a death sentence.

Following a hearing in which Eqbal proceeded pro se, the IJ denied all relief and ordered him removed to Afghanistan. The IJ found that Eqbal was

No. 25-60504

not credible, he failed to provide evidence corroborating his claims, and the non-testimonial evidence did not independently establish his eligibility for relief. The Board of Immigration Appeals agreed and dismissed Eqbal's appeal.

## II. Legal Standard

We review the Board's decision and consider the IJ's decision only to the extent it influenced the Board. *Arulnanthy v. Garland*, 17 F.4th 586, 592 (5th Cir. 2021). Here we consider both decisions because the Board expressly adopted and affirmed the IJ's decision. Questions of law are reviewed de novo. *Id.* Findings of fact, including credibility determinations, are reviewed under the substantial-evidence standard. *Id.* Reversal under the substantial-evidence standard is improper unless the evidence not only supports a contrary conclusion but compels it. *Santos-Alvarado v. Barr*, 967 F.3d 428, 436–37 (5th Cir. 2020).

Eqbal challenges the agency's decision in three respects: (A) the adverse credibility finding is not supported by substantial evidence, (B) the agency failed to meaningfully consider all the relevant evidence supporting his claims, and (C) the agency erred by requiring him to provide corroborating evidence that was not reasonably available. We agree with (A) and (B). Because we remand for the agency to reconsider its adverse credibility determination and to consider all key evidence, we do not address (C).

## A. Adverse Credibility

We uphold the agency's adverse credibility determination unless it is clear from the totality of the circumstances that no reasonable factfinder could make such a determination. *Arulnanthy*, 17 F.4th at 593. "The IJ and BIA may rely on *any* inconsistency or omission in making an adverse credibility determination" as long as the applicant's lack of credibility is

established by the totality of the circumstances and is "supported by specific and cogent reasons derived from the record." *Avelar-Oliva v. Barr*, 954 F.3d 757, 764 (5th Cir. 2020) (internal quotation marks and citations omitted); *see also* 8 U.S.C. § 1229a(c)(4)(C).

In making its adverse credibility determination, the IJ relied on three purported inconsistencies in Eqbal's testimony: (i) his employment history, (ii) his previous imprisonment by the Taliban, and (iii) harm to Eqbal and his family.

### *i. Employment History*

Eqbal testified consistently to—and his non-testimonial evidence confirmed—his employment history with the United States-backed Afghan government in all instances but one. And Eqbal provided an explanation to the sole inconsistency that no reasonable factfinder could reject.

Throughout the course of his immigration proceedings, Eqbal maintained that he started working as a bodyguard for Fahim in 1993. After the formation of the new Afghan government in 2001, Eqbal transitioned to working in various security positions for then-vice president Fahim and other high-ranking government officials until the fall of the Afghan government in 2021. His testimony differed, however, during his credible fear interview. Notes from Eqbal's credible fear interview reflect that he told the immigration officer that he began working for Fahim in 1972, rather than 1993. The agency heavily relied on this apparent discrepancy to find Eqbal to not be credible.

But Eqbal, throughout all proceedings, including when he appeared pro se before the IJ, explained that the date discrepancy was the result of the interpreter's erroneous translation between the Gregorian calendar used in the United States and the Afghan calendar he uses. During the credible fear interview, Eqbal stated that he began working as a bodyguard in 1372

(Afghan), which corresponds to 1993 (Gregorian). Rather than making the proper translation, the interpreter wrote "1372" as "1972." Two things convince us that the date discrepancy was no more than translation error. First, the Taliban movement did not exist in 1972, so Eqbal could not have been employed with Fahim's anti-Taliban forces. And second, Eqbal had yet to be born in 1972. No reasonable factfinder could have rejected Eqbal's explanation of the date discrepancy, especially considering that the dates were otherwise consistent throughout his I-589, personal declaration, hearing testimony, and non-testimonial evidence.

The IJ also found Eqbal's testimony of his employment history to not be credible because he stated in his I-589 that he was in middle school in 1993, and no middle schooler could be a bodyguard of a high-ranking official. Eqbal's I-589 reflects that he was in "middle school" from 1984 to 1999—a 15-year span that included three different schools—and "university" from 2017 to 2021. Eqbal argues that "middle school" was the only label the I-589 allowed him to provide for an educational institution other than "university." In 1993, when Eqbal began his employment, he was approximately 19 years old. We find no material inconsistency in a 19-year-old attending a pre-university educational institution and simultaneously holding a position as a bodyguard.[1]

---

[1] Nor do two other of the IJ's findings support its adverse credibility determination. First, the IJ stated that Eqbal testified that he was the head of national security from 1993 to 2001, which was inconsistent with him being in middle school at that time. But the hearing transcript reflects that Eqbal stated that he worked *for* the head of national security without any clear statement that he *was* the head of national security. While there appears to have been confusion between Eqbal, the IJ, and the interpreter, Eqbal's statement is consistent with his previous statement that he was a bodyguard for Fahim, who was, at that time, "the head of National Security."

Second, the IJ found it inconsistent that Eqbal testified to starting his position in 1993 and 2001. But there is no discrepancy in Eqbal's testimony that he began working as

No. 25-60504

In all, the IJ did not point to any true inconsistency in Eqbal's testimony about his employment history, so any claimed discrepancy in this regard was not a basis to find Eqbal not credible. *See Nkenglefac v. Garland*, 34 F.4th 422, 430 (5th Cir. 2022) ("An adverse credibility determination must be supported by specific and cogent reasons *derived from the record*." (citation modified)).

*ii. Previous Imprisonment*

The IJ found Eqbal to not be credible because Eqbal did not include in his credible fear interview nor personal declaration that he was previously imprisoned and tortured by the Taliban. That was incorrect. In both his credible fear interview[2] and personal declaration, Eqbal described how the Taliban imprisoned and tortured him for one month.

During the hearing, the IJ noted Eqbal's testimony about the imprisonment and questioned: "But do you recall during the credible fear interview being asked have you ever been detained or arrested while you were in Afghanistan and saying no?" Eqbal explained that the credible fear interview was limited to yes or no questions and he would have mentioned the imprisonment if he had been asked about the Taliban's first regime. The agency cannot rely on Eqbal's apparent concession that he did not mention

---

a bodyguard in 1993 and then began working as security personnel for the newly formed Afghan government in 2001. Those were two distinct roles that began at different times, and it was unreasonable for the IJ to discredit Eqbal's credibility based on his changing positions.

[2] Notes from the credible fear interview incorrectly state that Eqbal was imprisoned in 1977, not 1997 or 1998 like he testified during the hearing. Like the year that he began his employment, we agree that the incorrect date was caused by a mistranslation between the Gregorian and Afghan calendars. No reasonable factfinder could find that Eqbal was imprisoned by the Taliban before the Taliban existed and when Eqbal was a child. This mistranslation is therefore not a proper basis for the IJ's adverse credibility determination.

his imprisonment during the credible fear interview because his response was based on the IJ's faulty premise that Eqbal omitted the imprisonment from the credible fear interview. The record reflects that Eqbal consistently testified about the prior imprisonment, including during his credible fear interview. The IJ's assertion that Eqbal did not reference the imprisonment in his credible fear interview is "unsupported by the record." *Mwembie v. Gonzales*, 443 F.3d 405, 410 (5th Cir. 2006). Therefore, neither the IJ's assertion nor Eqbal's response compels us to uphold the adverse credibility determination on this ground. *Id.*

### iii. Harm to Applicant and Family

After rejecting the agency's reliance on Eqbal's employment history and imprisonment, what remains supporting the IJ's adverse credibility determination are its three findings of inconsistent testimony relating to harm the Taliban inflicted on Eqbal and his family.

First, Eqbal testified that when he was at the airport attempting to escape Afghanistan, Taliban agents beat him and injured his hand. The IJ correctly noted that this was Eqbal's first mention of being harmed by the Taliban at the airport. Eqbal argues that the hand injury occurred during his month-long imprisonment and the IJ misunderstood him to say that the injury occurred at the airport. The hearing testimony reflects Eqbal clearly stating, and reaffirming in response to later questioning, that the Taliban injured his hand at the airport. When reconsidering Eqbal's credibility, the agency may consider this testimony, but because the Board did not cite this testimony when affirming the IJ's decision, we are skeptical that it was a substantial factor in the agency's adverse credibility determination.

Second, the IJ found Eqbal to not be credible because he did not submit a letter from his mother corroborating his testimony that the Taliban beat her to the point of permanent disability because she refused to reveal

Eqbal's location.     But whether an applicant is credible and whether corroborating evidence supports an applicant's claims are two independent inquiries.  *See Aben v. Garland*, 113 F.4th 457, 467 (5th Cir. 2024).   On remand, the agency may consider evidence of Eqbal's mother's injury under those inquiries.

Third, the IJ found that Eqbal testified inconsistently about the Taliban's interactions with his family.  Eqbal detailed his family's numerous encounters with the Taliban since he fled Afghanistan, including the Taliban approaching his wife to inquire about his location, his family remaining in hiding and having to frequently relocate to avoid the Taliban, and the Taliban beating his wife and kidnapping his daughter.  It is not apparent from the IJ's one-sentence explanation what testimony it found inconsistent.  The agency may reconsider whether Eqbal contradicted himself when testifying to the Taliban's interactions with his family since his departure from Afghanistan.  *See Nkenglefac*, 34 F.4th at 428 ("[D]iscrepancies among an applicant's credible fear interview, other records, and testimony can be considered in deciding credibility.").

\*      \*      \*

On this record, no reasonable factfinder could find a material inconsistency in Eqbal's employment history or prior imprisonment.  Because those two findings formed the overwhelming basis for the agency's adverse credibility determination and impacted all of its other findings, we cannot determine, as the substantial-evidence standard requires, whether Eqbal was credible under the totality of the remaining circumstances.  *See Avelar-Oliva*, 954 F.3d at 763–64.  We therefore VACATE the agency's decision and REMAND for the agency to determine credibility without adversely relying on these particular features of Eqbal's employment history or imprisonment.  *See Gonzales v. Thomas*, 547 U.S. 183, 186 (2006) (per

curiam) (because the court does not engage in factfinding, remand for additional investigation or explanation is the proper course "except in rare circumstances" (citation omitted)).

## B. Consideration of Evidence

The agency must meaningfully consider all the relevant evidence supporting an applicant's claims, and we will not uphold the agency's decision under the substantial-evidence standard if it fails to address key evidence. *Aben*, 113 F.4th at 465–66. The agency need not "address evidentiary minutiae or write any lengthy exegesis," and we will not remand simply because the agency did not explicitly discuss all evidence. *L.N. v. Garland*, 109 F.4th 389, 396 (5th Cir. 2024) (internal quotation marks and citation omitted). But the agency's general statement that it considered all the evidence does not necessarily establish its meaningful consideration. *See Aguilar-Quintanilla v. McHenry*, 126 F.4th 1065, 1071 n.3 (5th Cir. 2025).

We are not convinced that the agency meaningfully considered three key pieces of evidence: photographs of Eqbal working with high-ranking officials of the Afghan government, his government employment identification cards, and Taliban documents calling for his arrest because of his employment in the Afghan government.

First, Eqbal provided photographs of himself with high-ranking Afghan government officials including vice president Fahim, president Hamid Karzai, and the chief executive of Afghanistan. The photographs contained English descriptions, translation certificates, circles locating Eqbal, and dates. The IJ never discussed these photographs, which could have corroborated Eqbal's claims that he worked as a bodyguard for Fahim from 1993 to 2001 and then in the Afghan government from 2001 to 2021. The Board found that the IJ was permitted to give the photographs diminished weight because Eqbal did not dispute that the photographs were

not authenticated nor translated and failed to include identifying information such as dates and a description of his role. But because the IJ never addressed the photos, there were no authenticity concerns for Eqbal to dispute. Moreover, the Board was incorrect—the photographs contained dates and translated descriptions. The photos depicted Eqbal standing next to or behind high-ranking officials in military-like clothing. The agency erred in wholly failing to consider whether these photographs could support Eqbal's claim that he worked as security personnel in the Afghan government.

Second, Eqbal submitted what appears to be two government employment identification cards. Both depict Eqbal's name, photo, and job title and state that they were issued by the "Islamic Republic of Afghanistan." The IJ did not explicitly consider the employment identification cards. The IJ generally referred to "identification" submitted, but it is unclear whether the IJ was referring to the employment cards, which would be highly relevant to Eqbal's claims, or the passport and national identification cards he submitted, which are less probative of his claims. What's more, the IJ discredited documents purporting to show Eqbal's employment because it found that he did not credibly testify to his employment history. For the reasons previously discussed, the IJ erred in finding Eqbal's employment testimony not credible, and that erroneous finding influenced its consideration of Eqbal's evidence.

Third, Eqbal submitted documents issued by the Islamic Emirate of Afghanistan calling for Eqbal's arrest because of his employment in the former Afghan government. The IJ noted that certain documents stated that Eqbal worked with high-ranking Afghan officials. It is unclear whether the IJ considered the warrant-equivalent documents. If not, the IJ erred in failing to consider evidence of the Taliban's attempts to arrest Eqbal because of his employment. And if the IJ was referring to the warrants, it nevertheless

discredited them for lacking an original document and for being translated some months before they were submitted. The IJ failed to meaningfully consider the warrants by discrediting them for those reasons. The record contains what appears to be the original warrant. *See L.N.*, 109 F.4th at 396 (an IJ fails to meaningfully consider evidence when its decision is inconsistent with the evidence). And properly viewing the translation certificates as using a day/month/year format dispels the IJ's authenticity concerns.

\* \* \*

We cannot uphold the agency's decision because it failed to address key evidence—specifically, photographs of Eqbal working with Afghan officials, employment identification cards, and warrants for Eqbal's arrest. *See Cabrera v. Sessions*, 890 F.3d 153, 162 (5th Cir. 2018). The agency made short shrift of the evidence after finding Eqbal to not be credible. But we do not blindly defer to findings of the IJ and the Board. *See Abdel-Masieh v. INS*, 73 F.3d 579, 585 (5th Cir. 1996). On remand, the agency must meaningfully consider evidence supporting Eqbal's claims.

## C. Corroborative Evidence

Because we vacate the agency's decision and remand for further proceedings, we do not address the IJ's finding that Eqbal failed to submit evidence to corroborate his claims. An IJ may require an applicant to submit evidence corroborating his claims, regardless of whether the IJ finds the applicant credible, and failing to provide such corroborative evidence can be fatal to the applicant's claims for relief. *See Avelar-Oliva*, 954 F.3d at 764. On remand, the agency should consider what corroborating evidence, if any, Eqbal must submit in light of our analysis regarding his employment history and prior imprisonment.

No. 25-60504

## IV. Conclusion

We hold that the IJ's determination that Eqbal's testimony as to his employment history and imprisonment was not credible is not supported by this record. Because the agency's determination infected the entirety of its decision, we GRANT the petition for review, VACATE the Board's decision, and REMAND for further proceedings consistent with this opinion.